# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# NORTHERN DIVISION

**CHERYL MATORY**
**TOMECA BARNES**                                                                 **PLAINTIFFS**

**VS.**                                              **CIVIL ACTION NO. 3:16CV 989 LG-RH**

**HINDS COUNTY SHERIFF VICTOR MASON,**
**IN HIS INDIVIDUAL CAPACITY, AND**
**HINDS COUNTY, MISSISSIPPI**                                                     **DEFENDANTS**

## FIRST AMENDED COMPLAINT
### (Jury Trial Demanded)

**COME NOW**, Plaintiffs Cheryl Matory and Tomeca Barnes, by and through her attorney, Lisa M. Ross, and file this their Complaint against the Defendants, as follows:

## JURISDICTION AND VENUE

1. This suit is authorized and instituted pursuant to Title VII of the Civil Right Act of 1964, as amended, 42 U.S.C. §§ 2000 et seq.; Civil Rights Act of 1866, 42 U.S.C. § 1981, 42 U.S.C. § 1983, 29 U.S.C. § 201 and the First and Fourteenth Amendments of the United States Constitution. Jurisdiction of the Court is invoked pursuant to 42 U.S.C. § 2000E-5(f), 28 U.S.C. § 1343(a)(3) & (4), and 28 U.S.C. § 1331.

2. Venue is proper pursuant to 28 U.S.C. § 1391(b). A substantial part of the events or omissions giving rise to these claims acts complained of by Plaintiffs occurred in the Northern Division of Southern District of Mississippi.

## PARTIES

3.  Plaintiff Cheryl Matory (hereinafter "Matory") is an adult African-American female resident citizen of Hinds County, Mississippi.

4.  Plaintiff Tomeca Barnes (hereinafter "Barnes") is an adult African-American female resident citizen of Hinds County, Mississippi.

5.  Defendant Victor Mason (hereinafter "Mason") is the Sheriff of Hinds County, Mississippi. At all times material herein, Mason was acting within the course and scope of his employment as Sheriff of Hinds County, Mississippi. Mason may be served with process of this Court by service on him at his business address of Hinds County Sheriff's Office, 407 East Pascagoula Street, Jackson, Mississippi. Victor Mason is sued in his individual capacity.

6.  Defendant Hinds County, Mississippi was and still is a county organized and existing under and by virtue of the laws of the State of Mississippi. This defendant may be served with process of this Court in care of its agent for service, Darrel McQuirter, President, Hinds County Board of Supervisors, Hinds County Chancery Court Building, 316 South President Street, Jackson, Mississippi.

## STATEMENT OF FACTS

7.  In 2015 Mason asked Matory, then a Jackson Police Department (hereinafter "JPD") corporal and crime scene investigator, to assist him in recruiting employees to work for him in anticipation of his election as the Sheriff of Hinds County, Mississippi. At the time, Matory had more than 20 years of law enforcement experience with JPD and the Biloxi Police Department. Mason directed Matory to invite Barnes, then a Jackson Police Department (hereinafter "JPD") corporal, to work with them to elect him as

2

sheriff. Mason promised Matory he would select her as his undersheriff if he won the sheriff's election. Mason promised Barnes that he would select her as the head supervisor of Internal Affairs Division (hereinafter "IAD") if he became the sheriff.

8. During the campaign season, Mason began frequently texting Matory about Barnes. On June 16, 2015, Mason texted Matory and asked "Where Temeca Barnes?" Matory replied that Barnes was working. On July 8, 2015 at 2:20 p.m., Mason texted Matory and asked, "Where's Temeca Barnes?" Matory, who also worked part-time at the Hilton, replied: "Not @ the Hilton Bossman." Mason retorted: "she and I need to be at the Hilton." Matory responded: "-." Mason texted again and said, "where is she?" Matory replied: "somewhere praying." Barnes also is a minister. In response, Mason texted, "hopefully to get me." Matory texted Mason and asked "are you serious?" Mason did not respond.

9. On July 15, 2015 at 6:12 a.m., Mason sent Matory a video of a male JPD officer performing a sexual act on another male. On July 26, 2015 at 7:37 a.m., Mason texted Matory and said "Temeca Barns." Matory responded, "what's going on Bossman, Barnes." Mason asked, "where is she?" Matory told Mason she didn't know. On July 28, 2015, Mason sent Matory a photograph at 2:27 a.m. of Barnes in her Honor Guard uniform. At 5:28 p.m. that day, Mason texted Matory and asked "have you talked with Temeca Barnes this evening?"

10. On August 4, 2015, Mason defeated then Sheriff Tyrone Lewis in the primary election. Four days after winning the primary as the democrat candidate for sheriff, Mason texted Matory and asked, "where's Officer Barnes?" Matory told Mason, Barnes was out on leave. In addition to working as a corporal at JPD, Barnes is a member of the

3

military.  On August 18, 2015, Mason texted Matory and said "Hey."  Matory responded: "what doing."  Mason stated "thinking about Barnes."  Matory responded "Lol!!!!! Not time."  Mason responded "ok."  On August 19, 2015, Mason texted Matory and stated "Barnes."  On August 31, 2015, Mason texted Matory: "TB."  Matory did not respond.

11.    On September 9, 2015, Mason texted Matory and asked, "Where's TB?"  Matory responded: "What up Bossman!!!!"  Mason responded "Temeca Barnes."  Matory told Mason, "she's busy."  Mason asked Matory **"Will she give me some?"**  Matory responded, "Ahhhhhhh I don't know, What Doing?"  Mason then stated "**If she doesn't you won't get hired. Take a guess**."  Matory texted Mason and said, "**Well that's not my fault can't tell grown folks what to do with personal life."**  Mason texted back and said "**Ok I'll show you**."  Matory responded and said, "If you are a charmer you know what to do, OK 10/4."  Mason stated, "**Oh I am trust me**."

12.    On November 3, 2015, Barnes attended Mason's victory party at Hal and Mal's.  When members of Mason's campaign team were taking photographs, Mason positioned himself so close to Barnes that her right side was pressed against Mason's chest and stomach.  Mason sent Barnes an edited copy of the photograph excluding most of the other campaign team.

13.    On November 9, 2015, Mason met with his campaign team to discuss his plans for the sheriff's department.  While at that meeting, Mason called Barnes away from the group.  Mason placed his arm around Barnes's shoulder and said "give me your number, I don't have it."  Barnes gave Mason her telephone number.  At that time, Barnes did not know about Mason's chatter with Matory about her.

4

14. Within minutes of leaving the meeting, Mason texted Barnes at 9:55 p.m. and stated: "Lt. Tomeca Barnes Office of Special Incestigations (SIC) Hinds County Sheriff's Dept." Mason texted Barnes and said, "Now I have to get you a call sign. Any ideas?" Barnes responded, "Let's see!" Mason then asked Barnes "did I catch you at a bad time?" Barnes responded, "No, I'm just getting out of roll call. My apologies for the breaks in the traffic." Mason apologized for texting Barnes and told her that he didn't know she had to work that night. Barnes responded "No problem." Mason texted Barnes and said "We can talk later. Thanks for tonight." That same night, Mason texted Barnes and said "I'm very considerate of your time and believe me I don't want to disturb you. With that being said you can call me or text me anytime you feel you need to. I do mean that." Barnes responded" "God bless you Sir and thank you so very much."

15. On November 12, 2015, Mason texted Barnes and said "Goodmorning (sic) Lt. Barnes." She replied: "Good Morning Sheriff." Mason responded, "You like that don't you?" Barnes texted, "You're the Sheriff." Mason replied: "And you're the lieutenant." In response, Barnes texted, "Yes Sheriff."

16. On November 15, 2015, Mason sent Barnes a photograph of a badge to show her what her Hinds County Sheriff's Department (hereinafter "HCSD") badge would look like. On the same day, Mason texted Barnes and asked, "how many years of service do you have including military?" Barnes texted Mason and told him she worked 15 years as a police officer and served nine years and 10 months in the military. Mason texted Barnes and said "Your monthly salary according to my stats will be $4720.15." Barnes responded "But God."

17.     On November 21, 2015, Mason texted Barnes and asked her if she was sure she was okay with a salary of $4,720.15. Barnes replied, "Yes, Sheriff it's great." Mason texted Barnes and asked "**Would it bother you if I moved you up**?" Barnes responded: "**Why would you do that Sheriff?**" Mason replied: "Why shouldn't I." Barnes texted: "I'm no different from anyone else Sheriff." Mason responded: "**I have my reasons**."

18.     Mason told his campaign staff at a meeting on November 24, 2015 that he planned to take them on an excursion by train to New Orleans. Barnes told Mason that she might have drill. On the same day, Mason texted Barnes that it bothered him that "you have to work at night and you should be asleep." On November 25, 2015, Mason texted Barnes a picture of a train and said "I'm leaving on Thursday going south to NOLA to meet the cars and the following day ride to Jackson to pick up the rest of the crew."

19.     On November 26, 2015 at 5:05 p.m., Mason texted Barnes and said "Happy Thanksgiving." Later that evening, Mason texted Barnes and stated "You need to send me a selfie so I'll know you're in Tunica." Barnes texted Mason back and said, "Just know that I'm here…" Mason replied, "Ok I trust you." At 8:23 p.m., Mason texted Barnes and said "Hello Lt. Barnes?"

20.     On December 5, 2015, Mason texted Barnes a copy of a menu and stated "sorry you'll miss the trip." On December 6, 2015, Mason texted Barnes and stated "Roses are red, Violets are blue, we're going on a fabulous train ride, what happend(sic) to you?" Mason texted Barnes the same day and said "All Aboard!! Oh but you've got drill that weekend." On December 8, 2015, Mason texted Barnes and said "Goodmorning (sic) Lt. Barnes, Fire trucks are Red, Police Lights are blue, the train will leave and it will leave

6

without you." On December 9, 2015, Mason texted Barnes and said "The sun is red The Sky is blue as we leave from Jackson on the train We'll be waving at you."

21. On Thursday, December 31, 2015, Mason was sworned in as sheriff of Hinds County, Mississippi. On January 4, 2016, Matory was hired as the undersheriff of Hinds County. Barnes was hired as the head supervisor of HCSD's Internal Affairs Division. Immediately after joining HCSD, Mason directed Matory to have Barnes to come to his office. After Matory placed calls to Barnes asking her to come to Mason's office, Mason would direct Matory to leave.

22. Mason would close the door to his office when Barnes arrived. To brief Mason, Barnes carried copies of reports that he used to brief the sheriff. Sometimes, Barnes would read directly from the reports. When Barnes looked up from reading the reports, Mason would be staring at her. Mason's stares were so intense that Barnes asked Mason "why are you looking at me like that." Mason did not explain.

23. On January 23, 2016, Barnes was away at drill when Mason texted her and inquired about her whereabouts. Barnes texted that she was at "drill" and sent him a picture showing her dressed in military gear with most of her face covered. At 7:24 a.m., on January 24, 2016, Mason asked Barnes to send him a selfie. At 8:30 a.m., Mason sent Barnes a photograph of a person in military gear and told her that she looked like the person in the photograph. Barnes responded that she did not look like that person. Mason texted Barnes and said, "Yes it does. I had to look twice. You never sent my picture. Do you have your gear on?" Barnes texted Mason and said "I sent one yesterday." Mason replied, "That was yesterday."

7

24. On January 27, 2016, Mason texted Barnes a copy of the January 24, 2016 photograph of the unidentified person he claimed looked like her. On January 28, 2016, Mason texted Barnes a copy of the photograph she sent to him on January 23, 2016 showing her dressed in military gear with most of her face covered. On January 29, 2016, Mason texted Barnes the same photographs of the unidentified person he sent her on January 24, 2016 and January 27, 2016 and asked her "When did you take this picture?" Barnes responded by sending Mason two pictures of her dressed in full military gear. Mason responded: "Nice!!!!!" and "Oh wow look at you. Awesome. Anymore?" Barnes responded "No, I'm at the gym."

25. After the text message exchange with Mason, Barnes began to spurn Mason's unwanted advances toward her. Barnes was so uncomfortable being left alone with Mason that she asked him if Matory could remain in his office when she briefed him. Barnes told Matory that she did not feel comfortable with Mason. Mason told Matory that she better make sure that Barnes came to his office "or else." When Matory asked Mason what he meant by "or else," he told her "you think I'm playing. I'll show you." Matory told Mason that she was not going to arrange for him to have sex with Barnes. Mason became angry and began to distance himself from Matory and Barnes.

26. Before he distanced himself from Matory, Mason asked Matory what would she do if she came to his office and it smelled like "ass." Matory asked Mason "are we still dealing with that, we have work to do." Matory asked Mason not to involve her in his plans for Barnes and to stop directing her to tell Barnes that he was interested in having sex with her.

8

27. In the Spring of 2016, Mason repeatedly told Matory he was going to make her kiss an employee he nicknamed "Lips." Mason began saying in his office "everyone loves dick." When Matory asked Mason why he was using derogatory language, he said he was referring to Captain Richard Brown. Matory asked Mason to stop but Mason said it was not unprofessional and it is true that "everybody loves dick."

28. On July 5, 2016, Mason demoted Matory and Barnes. Pete Luke, a white male, was selected to replace Matory as the undersheriff. Keith Barnett, an African-American male, was selected to replace Barnes as the head supervisor of IAD. Before demoting Matory and Barnes, Mason failed to pay them the salary he conveyed to them when he was recruiting them. Barnes earned less at the HCSD than she earned when she was with JPD. When Barnes texted Mason about the discrepancy in her pay on January 29, 2016, Mason did not respond.

29. After Matory's demotion, she was given a position as a crime scene investigator and told that she would be on call 24 hours seven days a week with no schedule to let her know when she was on call. From July 5, 2016 until her termination on December 28, 2016, Matory worked eight hours every week day and was on call after she left work on all week days and was on call all day on both weekend days. Upon information and belief, Matory was not placed in a rotation with other investigators to work crime scenes and was not compensated for the time she was on call in violation of federal law.

30. On December 27, 2016, Matory was directed to appear at the office of Claire Barker, counsel for the Hinds County Sheriff's Department. During the meeting in Claire Barker's office, Barker told Matory that "we" are all concerned about "you." Barker told Matory that she knew that Matory was angry about something. Barker told Matory

she was angry about her demotion as undersheriff and asked what they could do to help. Barker told Matory she needed a note from her physician that she could continue to carry her service weapon. After the meeting ended, Matory asked if she had permission to leave. Barker told her yes and she left.

31. Matory walked to her vehicle. As she was pulling out of her parking space, Captain Richard Brown and Sgt. Trey Brister approached her at her vehicle. Sgt. Trey Brister demanded Matory's service weapon as well as the truck she was driving. Matory cleared her service weapon and placed it on the seat of the truck. Matory exited the truck and asked the deputy sheriff how was she supposed to get home. Sgt. Brister said he didn't know as he looked at Captain Brown. Matory began walking home.

32. Before Matory reached her home, she received a telephone call from Sgt. Garcia, who told her that he had an important letter for her. Garcia delivered Matory's termination letter from Mason, who knew that Matory had filed a charge of discrimination against him, received a right to sue letter and had less than two months to file a lawsuit against him. The reasons Mason gave for terminating Matory are pretexts to cover up his race and sex discrimination and retaliation and an attempt by Mason to avoid Justice.

33. Mason also demoted Barnes from head supervisor of IAD on July 5, 2016 to third shift patrol and required her from 10:45 p.m. to 7:20 a.m. months after telling Barnes it bothered him that "you have to work at night and you should be asleep." From January 2016 to July 5, 2016, Barnes was off on weekends. After she was demoted, she was required to work on weekends, even though Mason was aware that she served as a

minister and sometimes preached on Sunday mornings and did she performed her military duties on weekends.

34. Before Barnes joined the sheriff's department, Mason showed her a photograph of the design for her new badge. Mason also told Barnes he had ordered her a FBI jacket. Barnes never received her new badge and/or her FBI jacket that Mason claimed he ordered. All of the deputies working on Barnes's current shift have new badges. Barnes does not.

35. On January 10, 2017, Barnes was ordered to turn her patrol car before she leaves for military duty. Another female deputy, who is in the military, was not required to turn in her patrol car while she was on military duty. Upon information and belief, that female has not accused Mason of discrimination or sexual harassment.

36. When Barnes questioned her supervisor about the disparity in treatment, he texted her and said "Deputy Barnes I will not discuss another deputies (sic) affairs with you. You are taking five days off for military totaling 40 hours. You are being given a direct order to leave your vehicle and key at the patrol office for the duration of the days that you have requested for military leave. Any further defiance from you regarding this matter will be considered insubordination."

37. On January 18, 2017, Barnes called the office to inquire about her patrol vehicle, the administrative assistant told Barnes she would report her call to the captain and ask him to call Barnes. Barnes did not hear from the captain. On January 19, 2017, Barnes called the HCSD's office again about her patrol vehicle. Barnes received a text from a sheriff's deputy employee informing her that "Your car isn't ready yet. But there will be a spare down bottom and the key should be in the top right desk draw." Prior to January

2017, Barnes was allowed to drive her patrol car home. Now, Barnes is required to drive to Raymond to pick up a vehicle before she begins her patrol.

## CAUSE OF ACTIONS

### SEXUALLY HOSTILE WORK ENVIRONMENT
### QUID PRO QUO SEXUAL HARASSMENT

38. Plaintiffs reallege all prior paragraphs of the Complaint as if set out here in full.

39. Plaintiffs contend Mason's repeated unwanted and unwelcomed demands for Matory to arrange sexual liaisons with Barnes had the effect of unreasonably interfering with the Plaintiffs' work performance and creating an intimidating, hostile and offensive working environment for both women.

40. Plaintiffs contend Mason and Hinds County, Mississippi conditioned the terms and conditions of their continued employment on Matory's willingness to arrange sexual liaisons between Barnes and Mason and Barnes's willingness to have unwanted sex with Mason.

41. As a proximate consequence of the actions of Mason, the Plaintiffs suffered emotional harm.

### SEX DISCRIMINATION

42. Plaintiffs reallege all prior paragraphs of the Complaint as if set out here in full.

43. Plaintiffs contend Mason subjected them to discrimination on account of their sex by engaging Matory in conversations about whether Barnes would have sex with him and attempting to coerce Matory to convince Barnes to have sex with him in exchange for employment and continued employment with the Hinds County Sheriff's Department.

44. Plaintiffs contend Mason and Hinds County, Mississippi conditioned the terms and conditions of their continued employment on Matory's acquiescence to arrange sexual liaisons between Mason and Barnes and Barnes's willingness to give in to Mason's unwanted sexual advances. In addition, Mason discriminated against Barnes on the basis of her sex when he replaced her with an African-American male, because she spurned his sexual advances.

45. As a proximate consequence of the actions of Mason, the Plaintiffs suffered emotional harm.

## RACE DISCRIMINATION

46. Plaintiffs reallege all prior paragraphs of the Complaint as if set out here in full.

47. Plaintiffs contend Mason subjected her to race discrimination when he demoted her and replaced her with a white male at a time when she was qualified to perform her duties as undersheriff.

48. As a proximate consequence of the actions of Mason, Matory suffered emotional harm.

## RETALIATION – FIRST AMENDMENT AND TITLE VII

49. Plaintiffs reallege all prior paragraphs of the Complaint as if set out here in full.

50. Plaintiffs contend Mason did what he promised Matory he would do if he did not get the sexual favors he desired. When it became abundantly clear to Mason that Matory and Barnes were not willing to fulfill his sexual desires, he refused to ensure that they were paid the salary he promised while recruiting them. Upset that Matory was unwilling to procure sex for him with Barnes, Mason demoted Barnes and Matory. Mason later terminated Matory all because when she would not assist him in his efforts to have sex

with Barnes and chastised him about other sexually derogatory conduct in the workplace. Mason retained employees who were aware of his indiscretions as well as other deputies who have engaged in sexual misconduct under Mason's supervision. The demotions and

termination had the effect of unreasonably interfering with the Plaintiffs' interest in continual employment with the Hinds County Sheriff's Department.

51.	Upon information and belief, Mason was the official policymaker for the Hinds County Sheriff's Department and any reasonable sheriff would have known in 2016 that he could not conditioned an employee's job on her willingness to arrange and or participate in sexual encounters for him. In addition, any reasonable sheriff would have known that public employees have a clearly established right to work in a place free of sex discrimination and sexual harassment. Any reasonable sheriff also would have known in 2016 that the Plaintiffs had a right to speak out against sexual harassment in the workplace especially sexual harassment perpetrated by the county's chief law enforcement office.

52.	As a proximate consequence of the actions of the Defendant, the defendants suffered damages.

## **BREACH OF CONTRACT/DETRIMENTAL RELIANCE**

53.	Plaintiffs reallege all prior paragraphs of the Complaint as if set out here in full.

54.	Plaintiffs contend Mason used his apparent authority to cause them not to be paid at the rate them when he recruited them from JPD. In addition, Mason terminated Matory's at-will employment contract because she refused to engage in unlawful conduct of soliciting Barnes for sexual favors for Mason.

55. Upon information and belief, Defendant knew or should have known that the Plaintiffs would rely to their detriment on the salaries that he promised them if they left JPD and joined him at the sheriff's department. Moreover, Mason knew or should have known that he was breaching Matory's contract and that he could not fire Matory because she refused to arrange sexual encounters between Mason and Barnes in violation of Mississippi's public policy against solicitation and/or human trafficking.

56. As a proximate consequence of the actions of Defendant, the Plaintiffs suffered economic harm.

## FAIR LABOR STANDARDS ACT

57. Plaintiff realleges all prior paragraphs of the Complaint as if set out here in full.

58. Plaintiff contend Mason violated the Fair Labor Standards Act when he placed her in a position and required her to be on call 24 hours seven days a week without compensating her for her on call work.

59. As a proximate cause of the action of the Defendants, Matory suffered emotional and economic harm.

## DAMAGES

60. As a consequence of the foregoing misconduct of the defendants, Plaintiffs Cheryl Matory and Tomeca Barnes sustained pain and suffering, physical injury, great mental distress, depression, insomnia, shock, fright and humiliation.

61. As a consequence of the foregoing misconduct of the Defendants, Plaintiffs Cheryl Matory and Tomeca Barnes have been damaged in an amount exceeding the jurisdictional requirements of this Court. Both Plaintiffs exhausted their administrative

remedies and have timely filed this action. (*See*, Exhibit A and B, copies of the Right to Sue letters of Cheryl Matory and Tomeca Barnes, respectively).

**RELIEF**

62. Plaintiff requests that the Court issue the following relief:

a. Enter declaratory relief declaring that the Defendants engaged in sexually hostile work place harassment, sex discrimination and race discrimination and conditioned the Plaintiffs' employment on their willingness to tolerate and participate in sexual harassment.

b. Enter an Order enjoining the Defendants from engaging in such discrimination and retaliatory practices in the future.

c. Enter temporary and permanent injunctions restraining the Defendants from discriminating, harassing and retaliating against the Plaintiffs because they engaged in protected activity;

d. Award the Plaintiffs reinstatement or in the alternative front pay, equitable back pay, economic damages for their lost pay and fringe benefits, together with compensatory from Hinds County, Mississippi and compensatory and punitive damages against Mason for intentional sex discrimination, sexual harassment, and retaliation, and in the amount to be determined by a jury of his peers.

e. Award Plaintiffs attorney fees, costs and expenses of litigation and;

f. Award such other relief to which Plaintiffs may be entitled under law.

**WHEREFORE PREMISES CONSIDERED**, Plaintiffs demand judgment against the Defendants in an amount exceeding the jurisdictional requirements of this

Court, all together with the costs and disbursement action, including attorneys' fees, plus interest, and for any other relief which this Court deems just and proper.

**RESPECTFULLY SUBMITTED** this, the 20th, of January, 2017.

                                            **CHERYL MATORY AND**
                                            **TOMECA BARNES**

                                            By: //s//Lisa M. Ross
                                                Lisa M. Ross (MSB#9755)
                                                Post Office Box 11264
                                                Jackson, MS 39283-1264
                                                (601) 981-7900 (telephone)
                                                (601) 981-7917 (facsimile)

                                            **Attorney for Plaintiffs**