UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

CHERYL MATORY AND
TOMECA BARNES                                          PLAINTIFFS

VS.                              CIVIL ACTION NO. 3:16CV989TSL-RHW

HINDS COUNTY SHERIFF VICTOR MASON,
IN HIS INDIVIDUAL CAPACITY, AND HINDS
COUNTY, MISSISSIPPI                                    DEFENDANTS

<u>MEMORANDUM OPINION AND ORDER</u>

Defendant Sheriff Victor Mason has moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) as to the First Amendment retaliation claim asserted against him in this cause by plaintiffs Cheryl Matory and Tomeca Barnes. The court, having considered the motion, along with plaintiffs' purported "Rule 7 Reply", concludes that Mason's motion is well taken and should be granted.

<u>Preliminary Matters</u>

Mason filed his motion for judgment on the pleadings on April 11, 2017 raising a qualified immunity defense as to plaintiffs' First Amendment retaliation claim. Plaintiffs did not respond to the motion. On May 2, 2017, this court entered an order directing plaintiffs to file a Rule 7 reply in accordance with <u>Shultea v. Wood</u>, 47 F.3d 1427 (5th Cir. 1995). Plaintiffs did not file a Rule 7 reply. Instead, they filed a "Memorandum in Support of Plaintiff's Opposition to Victor Mason's Motion for Judgment on

the Pleadings," notwithstanding that the court specifically stated
in its order that, having failed to timely respond to the motion
for judgment on the pleadings, plaintiffs would not be given an
opportunity to file a late response to that motion.  Sheriff Mason
promptly moved to strike plaintiffs' response, as it was both
untimely and in violation of the court's order.  Plaintiffs did
not respond to the motion to strike.  Instead, nearly a week after
that response was due, plaintiffs presented to the court a "Rule 7
Reply/Motion to File Second Amended Complaint Outside of Time",
asking for permission to file their "Rule 7 Reply/Second Amended
Complaint" out of time to address the deficiencies raised by Mason
in his motion for judgment on the pleadings.[1]  The court would be

---

[1]     Plaintiffs assert in their "Rule 7 Reply/Motion to File
Second Amended Complaint Out of Time" that plaintiffs' counsel did
not respond to Mason's motion for judgment on the pleadings
because she "believed the allegations in her First Amended
Complaint were sufficient to overcome Mason's request for
qualified immunity."  If that were the case, then counsel was
required by this court's uniform local rules to notify the court
of plaintiffs' intent not to respond.  See L.U.Civ.R. 7(b)(3)(A)
("Within the time allowed for response, the opposing party must
either respond to the motion or notify the court of its intent not
to respond.").  Had they done this, as the rule requires, the
court would have known that plaintiffs believed they had already
stated their best case, making a Rule 7 reply unnecessary.
Plaintiffs admit, though, that once ordered by the court to file a
Rule 7 reply, they should have done so and have no excuse for
their failure in this regard.
     Plaintiffs further argue in their "Rule 7 Reply/Motion to
File Second Amended Complaint" that since they have already filed
a memorandum in opposition to Mason's motion for judgment on the
pleadings, then the court should give Mason time to challenge the
sufficiency of their Second Amended Complaint.  However,

warranted in refusing to accept this submission as a Rule 7 reply,
since the court directed that plaintiffs' Rule 7 reply be filed by
May 12 and this was not done. Ultimately, though, it makes no
difference whether or not the court accepts plaintiffs' Rule 7
reply out of time since plaintiffs' submission adds nothing of
material substance to the allegations of the complaint.[2]
Therefore, the court will allow plaintiffs to file their Rule 7
reply out of time.[3] However, the court will deny plaintiffs'
motion to file this as an amended complaint since their proposed
amendment clearly does not state a cognizable First Amendment
retaliation claim. See <u>Horton Archery, LLC v. Farris Bros.</u>, No.

---

plaintiffs' memorandum response to Mason's motion is subject to a
motion to strike; and while plaintiffs have docketed their "Rule 7
Reply/Motion to Amend" as a response to the motion to strike,
plaintiffs' "Rule 7 Reply/Motion to Amend" is not a response to
the motion to strike. Rather, it addresses plaintiffs' failure to
file a Rule 7 reply and in substance, offers no reason why this
court should not strike plaintiffs' response to Mason's motion,
which was filed out of time and in violation of the court's May 2
order. Under the circumstances, the court finds that the motion
to strike should be granted.

[2] This submission contains no new factual allegations and,
with the exception of two sentences that appear in paragraph 50,
is identical to plaintiffs' original complaint. The two sentences
plaintiffs have added (1) identify the specific alleged speech on
which Matory's First Amendment retaliation claim is based;
(2) aver that this speech was on a matter of public concern; and
(3) recite that Matory's interest in speaking out on these matters
outweighed the efficiency of the Sheriff's Department.

[3] Obviously, it is not necessary for Mason to respond to
the Rule 7 reply in any manner of, for that matter, to respond to
plaintiff's various recent submissions.

2:13-CV-260-KS-MTP, 2014 WL 1239382, at *1 (S.D. Miss. Mar. 26, 2014) (an amendment "may be denied 'where the proposed amendment would be futile because it could not survive a motion to dismiss.'") (quoting Rio Grande Royalty Co ., Inc. v. Energy Transfer Partners, L.P., 620 F.3d 465, 468 (5th Cir. 2010)).

### Plaintiffs' Complaint

According to the allegations of the complaint, in 2015, in anticipation of being elected sheriff of Hinds County, defendant Mason asked Matory, then a corporal and crime scene investigator with the Jackson Police Department (JPD), to help him recruit employees for the Sheriff's Department; he said he would hire her as his undersheriff if he was elected. Mason was particularly interested in hiring Tomeca Barnes, and told Matory to ask Barnes, also a corporal with JPD, to help with his election campaign. He promised Barnes he would name her head supervisor of the Internal Affairs Division (IAD) if he was elected.

Matory alleges that throughout the election campaign, Mason repeatedly texted her about Tomeca Barnes, asking where Barnes was and whether Matory had talked with her. On one occasion, he texted Matory a photo of Barnes in her honor guard uniform. This texting about Barnes continued after Mason was elected sheriff in August 2015. Mason sent Matory texts asking where Barnes was, stating he was thinking about Barnes, and at times he just texted

Barnes' name or her initials.  In September 2015, shortly after the election, Mason asked Matory, "Will she (Barnes) give me some?"  When Matory responded, "I don't know.  What Doing?" he responded, "If she doesn't you won't get hired.  Take a guess." Matory replied, "Well that's not my fault can't tell grown folks what to do with personal life."

In November 2015, prior to being sworn in as sheriff, Mason asked Barnes for her number and began texting her directly and often, sometimes just saying hello, or encouraging her to "call me or text me anytime you feel you need to."  On one occasion, he sent her a photo of a Hinds County Sheriff's Department badge to show what her badge would look like.  On another, he told her that her monthly salary would be $4720.15 but asked, "Would it bother you if I moved you up?"  When she asked why he would do that, he responded, "Why shouldn't I. ...  I have my reasons."

In January 2016, after he was sworn in as sheriff, Mason hired Matory as undersheriff and Barnes as head supervisor of the Department's IAD.  Mason began asking Matory to have Barnes come to his office; after Barnes would arrive, he would direct Matory to leave and close the door.  As Barnes would make her reports to Mason, she would notice him just staring at her, which made her uncomfortable.  When she was away on military drills, he asked for pictures of her in her military gear, which she provided.  In

response to one, he wrote, "Nice!!!!!" and "Oh wow look at you. Awesome. Anymore?"

According to the complaint, Barnes began to spurn Mason's unwanted advances toward her. She was uncomfortable being left alone with him. She told Matory she was uncomfortable with him and asked Mason if Matory could remain in his office when she briefed him. When Mason told Matory that she better make sure that Barnes came to his office "or else", Matory asked what he meant by "or else". He told her, "you think I'm playing. I'll show you." Matory responded that she was not going to arrange for him to have sex with Barnes. Mason became angry and began to distance himself from Matory and Barnes. The complaint recites that before he distanced himself from Matory, Mason asked her what would she do if she came to his office and it smelled like "ass." Matory responded, saying "Are we still dealing with that, we have work to do." Matory asked Mason not to involve her in his plans for Barnes and to stop directing her to tell Barnes that he was interested in having sex with her.

Matory also alleges that in the spring of 2016, Mason kept telling her he was going to make her kiss an employee nicknamed "Lips." And he began saying, "Everyone loves dick." When Matory asked him why he was using derogatory language, he said he was referring to Captain Richard Brown. When Matory asked him to

stop, Mason told her it was not unprofessional and it was true that "Everybody loves dick."

Plaintiffs allege that soon after Barnes distanced herself from Mason, he demoted both of them. He replaced Mason with Pete Luke, a white male, and he replaced Barnes with Keith Barnett, a black male. Several months later – and apparently after Matory filed a charge of discrimination with the EEOC and received a notice of right to sue - Matory was terminated. And although Barnes continues to be employed by the Sheriff's Department, she claims she is treated less favorably than other employees.

Based on these allegations, plaintiffs have brought the present action against Hinds County and Sheriff Mason, individually, alleging claims of sex discrimination/harassment, race discrimination and retaliation under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.,* and 42 U.S.C. § 1981 and § 1983. Mason, asserting qualified immunity, has moved for judgment on the pleadings as to plaintiffs' First Amendment retaliation claims under § 1983, contending they have failed to plead facts which identify what "speech" they contend resulted in Sheriff Mason's retaliating against them, or to provide any substantive allegations sufficient to establish that such speech involved a matter of public concern and/or that it outweighed

Sheriff Mason's interest in promoting efficiency of the Sheriff's Department.

### Qualified Immunity

The doctrine of qualified immunity shields state officials from suit "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982)). The determination whether an official is entitled to qualified immunity involves two questions: (1) Did the official violate a statutory or constitutional right? (2) Was that right clearly established at the time of the challenged conduct? <u>Ashcroft v. al-Kidd</u>, 563 U.S. 731, 735, 131 S. Ct. 2074, 2080, 179 L. Ed. 2d 1149 (2011). The court has discretion in deciding which of these two issues should be addressed first in light of circumstances in the particular case at hand. <u>Pearson v. Callahan</u>, 555 U.S. 223, 235, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009). In some cases, the better course is to consider first whether the federal rights alleged to have been violated were clearly established and perhaps thereby avoid needlessly deciding constitutional questions. <u>Al-Kidd</u>, 563 U.S. at 735 (observing in context of deciding which issue to tackle first that "[c]ourts should think carefully before expending scarce judicial resources to resolve difficult and novel

questions of constitutional or statutory interpretation that will have no effect on the outcome of the case.") (internal quotation marks and citation omitted).

Qualified immunity does not merely offer immunity from liability, but provides immunity from suit. Foster v. City of Lake Jackson, 28 F.3d 425, 428 (5th Cir. 1994). Therefore, where a defendant seeks dismissal based on qualified immunity, the complaint is subject to a heightened pleading requirement, Schultea v. Wood, 47 F.3d 1427, 1434 (5th Cir. 1995): the plaintiff must plead sufficient facts to disprove the defendant's qualified immunity defense and must do so "'with factual detail and particularity, not mere conclusionary allegations.'" Wells v. Newkirk-Turner, No. 3:13CV733-DPJ-FKB, 2014 WL 5392960, at *3 (S.D. Miss. Oct. 22, 2014) (quoting Anderson v. Pasadena Indep. Sch. Dist., 184 F.3d 439, 443 (5th Cir. 1999)).

In the qualified immunity analysis, the question whether the facts establish a violation of a constitutional right is determined with reference to current law. Atteberry v. Nocona Gen. Hosp., 430 F.3d 245, 253 (5th Cir. 2005). However, to overcome a defendant's qualified immunity, the plaintiff must also prove that the right allegedly violated was "clearly established" at the time of the defendant's alleged misconduct. An official's conduct violates clearly established law when, at the time of the challenged conduct, "the law so clearly and unambiguously

prohibited his conduct" that "every 'reasonable official would

have understood that what he is doing violates [the law].'"

<u>al-Kidd</u>, 563 U.S. at 741, 131 S. Ct. at 2083 (quoting <u>Anderson v.</u>

<u>Creighton</u>, 483 U.S. 635, 640, 107 S. Ct. 3034, 97 L. Ed. 2d 523

(1987)).

> To answer that question in the affirmative, [the court]
> must be able to point to controlling authority – or a
> "robust 'consensus of persuasive authority'" that
> defines the contours of the right in question with a
> high degree of particularity.  Where no controlling
> authority specifically prohibits a defendant's conduct,
> and when the federal circuit courts are split on the
> issue, the law cannot be said to be clearly established.

<u>Morgan v. Swanson</u>, 659 F.3d 359, 371-72 (5th Cir. 2011).

Moreover, as the court suggested in <u>Morgan</u>, courts must not

"define clearly established law at a high level of generality,"

<u>al-Kidd</u>, 563 U.S. at 742, 131 S. Ct. at 2084, e.g., a First

Amendment right to freedom of speech.  The proper inquiry,

instead, is "whether the violative nature of particular conduct is

clearly established," <u>id.</u>, 131 S. Ct. at 2084.  This inquiry "must

be undertaken in light of the specific context of the case, not as

a broad general proposition."  <u>Brosseau v. Haugen</u>, 543 U.S. 194,

198, 125 S. Ct. 596, 599, 160 L. Ed. 2d 583 (2004) (per curiam)

(internal quotation marks and citation omitted).

<u>First Amendment</u>

While not entirely clear from the original complaint, it is

evident from plaintiffs' Rule 7 reply that only Matory has

10

asserted a First Amendment retaliation claim in this case; Barnes has not asserted a First Amendment claim. Matory's claim is grounded on her assertion, set forth in her Rule 7 reply, that

> [Matory] spoke as a citizen when she told Mason after he became sheriff that she would not assist him in his efforts to have sex with Barnes, when she asked Mason not to direct her to tell Barnes that he was sexually attracted to Barnes and when she spoke out against Mason's sexually derogatory's [sic] comment in the work place during the winter of 2016.[4]

For the reasons that follow, the court concludes that Mason is entitled to qualified immunity as to Matory's First Amendment retaliation claim because the right to free speech in this context was not clearly established. More to the point, it was not clearly established at the time Matory was terminated that the speech in question was uttered as a private citizen or that it addressed a matter of public concern. Accordingly, Mason's motion for judgment on the pleadings will be granted.

"[P]ublic employees do not surrender all their First Amendment rights by reason of their employment," Jordan v. Ector Cnty., 516 F.3d 290, 294-95 (5th Cir. 2008) (citation omitted), and public employees may not be retaliated against for exercising their right to free speech, Thompson v. City of Starkville, 901 F.2d 456, 460 (5th Cir. 1990). See also Davis v. McKinney, 518

---

[4]     Plaintiffs' complaint alleges Mason began saying "everyone loves dick" in the spring – not winter – of 2016. The complaint does not plainly identify any other "sexually derogatory comment."

F.3d 304, 312 (5th Cir. 2008) ("The First Amendment protects a
public employee's right, in certain circumstances, to speak as a
citizen on matters of public concern.") (citing <u>Pickering v. Board
of Educ.</u>, 391 U.S. 563, 568, 88 S. Ct. 1731, 20 L. Ed. 2d 811
(1968)). To establish a First Amendment retaliation claim, a
public employee must allege and prove that (1) she suffered an
adverse employment action; (2) her conduct was protected by the
First Amendment, that is, she spoke as a private citizen on a
matter of public concern; (3) her interest in commenting on the
matters of public concern outweighs the public employer's interest
in the efficient provision of public services; and (4) her
protected speech precipitated the challenged adverse employment
action. <u>Nixon v. City of Houston</u>, 511 F.3d 494, 497 (5th Cir.
2007); <u>Connick v. Myers</u>, 461 U.S. 138, 146, 103 S. Ct. 1684, 75 L.
Ed. 2d 708 (1983). The second element sets forth "two predicates
for public-employee speech to receive First Amendment protection;
the speech must be made *as a citizen* and on a *matter of public
concern*." <u>Gibson v. Kilpatrick</u>, 773 F.3d 661, 667 (5th Cir. 2014)
(emphasis added). Both of these are questions of law to be
resolved by the court. <u>Graziosi v. City of Greenville Miss.</u>, 775
F.3d 731, 736 (5th Cir. 2015). Accordingly, the court's analysis
proceeds as follows:

> First it must be determined whether the employee's
> speech is pursuant to his or her official duties. If it
> is, then the speech is not protected by the First

Amendment.  Second, if the speech is not pursuant to
official duties, then it must be determined whether the
speech is on a matter of public concern.  Third, if the
speech is on a matter of public concern, the <u>Pickering</u>
test must be applied to balance the employee's interest
in expressing such a concern with the employer's
interest in promoting the efficiency of the public
services it performs through its employees. (Footnotes
and citations omitted).

<u>Davis</u>, 518 F.3d at 312 (quoting Ronna Greff Schneider, 1 *Education*

*Law: First Amendment, Due Process and Discrimination Litigation* §

2:20 (West 2007)).

The Supreme Court made clear in <u>Garcetti v. Ceballos</u>, 547

U.S. 410, 126 S. Ct. 1951, 164 L. Ed. 2d 689 (2006), that "the 'as

a citizen' requirement draws a distinction between when public

employees speak in their private capacities and when they speak

'pursuant to their official duties.'"  <u>Gibson v. Kilpatrick</u>, 773

F.3d 661, 667 (5th Cir. 2014) (citing <u>Garcetti</u>, 547 U.S. at 421,

126 S. Ct. 1951).  "When public employees speak 'pursuant to their

official duties, the employees are not speaking as citizens for

First Amendment purposes, and the Constitution does not insulate

their communications from employer discipline.'"  <u>Id.</u> (quoting

<u>Garcetti</u>, 547 U.S. at 421, 126 S. Ct. 1951).  <u>See</u> <u>Garcetti</u>, 547

U.S. at 421, 126 S. Ct. 1951 (reasoning that "[r]estricting speech

that owes its existence to a public employee's professional

responsibilities does not infringe any liberties the employee

might have enjoyed as a private citizen").  "The critical question

under <u>Garcetti</u> is whether the speech at issue is itself ordinarily

13

within the scope of an employee's duties...." Lane v. Franks, —
U.S. —, 134 S. Ct. 2369, 2379, 189 L. Ed. 2d 312 (2014). Speech
is made pursuant to official duties if it is required by one's
position or undertaken in the course of performing one's job.
Haverda v. Hays Cnty., 723 F.3d 586, 598 (5th Cir. 2013) (citing
Williams v. Dallas Indep. Sch. Dist., 480 F.3d 689, 693 (5th Cir.
2007)). Relevant considerations in making this determination
include "the employee's job description, whether the employee
spoke on the subject matter of his employment, whether the speech
stemmed from special knowledge gained as an employee, and whether
the communication was internal or external in nature." Ezell v.
Wells, No. 2:15-CV-00083-J, 2015 WL 4191751, at *9-10 (N.D. Tex.
July 10, 2015) (citing Charles v. Grief, 522 F.3d 508, 513-14 (5th
Cir. 2008), and Davis, 518 F.3d at 313).

    The Fifth Circuit has observed that "when a public employee
raises complaints or concerns up the chain of command at his
workplace about his job duties, that speech is undertaken in the
course of performing his job." Davis, 518 F.3d at 313. "If
however a public employee takes his job concerns to persons
outside the work place in addition to raising them up the chain of
command at his workplace, then those external communications are
ordinarily not made as an employee, but as a citizen." Id. Thus,
for example, in Frietag v. Ayers, 468 F.3d 528 (9th Cir. 2006),
cited with approval in Davis, the court found that a corrections

14

officer's internal complaints up the chain of command about inmate exhibitionist behavior directed at female officers were made pursuant to her official duties, whereas her external reports of that same conduct were made as a private citizen. Id. at 532-545.

Matory alleges that in refusing to participate in Mason's attempts to have sex with Barnes and objecting to his sexually derogatory comments, she spoke as a private citizen. Courts have typically found that employee reports of sexual harassment up the chain of command are made in the course of performing one's job. See, e.g., Condiff v. Hart Cty. Sch. Dist., 770 F. Supp. 2d 876, 889 (W.D. Ky. 2011) (where school district employee had obligation under district's sexual harassment policy to report instances of sexual harassment to school officials, teacher's report of sexual harassment of student was made pursuant to her official duty as a teacher and not in her capacity as a citizen); Kagarise v. Christie, No. CIV. A. 09-0402, 2013 WL 6191556, at *6 (M.D. Pa. Nov. 26, 2013) (where the plaintiff's law enforcement job duties included reporting sexual harassment in the workplace, report of sexual harassment to supervisor was not protected); Ezuma v. City Univ. of N.Y., 665 F. Supp. 2d 116, 129 (E.D.N.Y. 2009), aff'd, 367 F. App'x 178 (2d Cir. 2010) (employee's internal report of sexual harassment allegation was part of employee's job duties where policy imposed obligation on employee to report sexual harassment); Harrison v. Oakland Cnty., 612 F. Supp. 2d 848, 867

(E.D. Mich. 2009) (employee was not speaking "as a citizen" when he complained to his superiors about co-worker's sexually inappropriate conduct); Dane v. Bd. of Sup'rs of La. State Univ., Civ. A. No. 07-138-RET-SCR, 2010 WL 3717242 (M.D. La. June 15, 2010) (plaintiff's reports of sexual harassment were made in the course of performing his job and pursuant to his official duties); cf. Parker v. Illinois Human Rights Comm'n, No. 12 C 8275, 2013 WL 5799125, at *5 (N.D. Ill. Oct. 25, 2013) (denying Rule 12(b)(6) motion where employee, agency's general counsel, argued that she was voicing her personal outrage and that reporting discriminatory conduct within the agency was not part of her job description and not work product of the general counsel).

In contrast to all these cases, the speech at issue here – Matory's refusal to assist Mason in his efforts to engage in a sexual relationship with Barnes or to tell Barnes that Mason was interested in having sex with her, and her objection to Mason regarding his alleged sexually derogatory comments (i.e., "everyone loves dick") – was directed to Sheriff Mason and no one else. Matory did not report Mason's alleged misconduct to anyone, internally or externally. Instead, she objected *to Mason* about his own alleged misconduct. Her actions arguably are more like those of the employee in Richardson-Holness v. Alexander, who the court suggested was acting as a private citizen in rejecting her supervisor's sexual advances. 161 F. Supp. 3d 170, 178 (E.D.N.Y.

2015). There, the court observed in *dictum* that the plaintiff's
actions "may have been in the best interests of her institution,
as the complaint suggests ... [b]ut it does not follow, even
remotely, that plaintiff's actions owed their existence to her
official responsibilities. Plaintiff was employed to teach, not
to deflect unwelcome sexual misconduct."). However, it was not
"clearly established" at the time of the alleged constitutional
violation that an employee's actions in deflecting – but not
reporting alleged sexual harassment – would be as a private
citizen. Cf. Howell v. Town of Ball, 827 F.3d 515, 520 (5th Cir.
2016) (noting that "the clearly established 'right' at issue must
be defined within the contours of the specific controversy" and
finding that "[t]he lack of the application of Garcetti to similar
facts at the time of Howell's discharge, coupled with the Supreme
Court's only recent clarification of Garcetti's citizen/employee
distinction in Lane, compels us to hold that the Board defendants
did not violate a 'clearly established' constitutional right when
voting to fire Howell.").

     Likewise, it was not clearly established that Matory's speech
was on a matter of public concern. "Whether an employee's speech
addresses a matter of public concern must be determined by the
content, form, and context of a given statement." Charles v.
Grief, 522 F.3d 508, 514 (5th Cir. 2008) (citation and quotation
marks omitted). Speech may contain elements of both personal and

public concern and nevertheless be found to address public

concern.  Salge v. Edna Indep. Sch. Dist., 411 F.3d 178, 186 (5th

Cir. 2005).  The Fifth Circuit has stated:

> It is well established that speech concerning official
> misconduct involves a matter of public concern.  See,
> e.g., Modica v. Taylor, 465 F.3d 174, 180-81 (5th Cir.
> 2006) (holding that misuse of public funds and official
> malfeasance are matters of public concern); Wallace v.
> County of Comal, 400 F.3d 284, 289-91 (5th Cir. 2005)
> ("[T]here is perhaps no subset of matters of public
> concern more important than bringing official misconduct
> to light." (citation and quotation marks omitted));
> Kinney [v. Weaver, 367 F.3d 337, 369 (5th Cir. 2004)]
> ("[I]t is well-established in the jurisprudence of both
> the Supreme Court and this court that official
> misconduct is of great First Amendment
> significance...."); Branton v. City of Dallas, 272 F.3d
> 730, 745 (5th Cir. 2001) ("We have held that public
> employees' speech reporting official misconduct,
> wrongdoing, or malfeasance on the part of public
> employees involves matters of public concern.").

Goudeau v. E. Baton Rouge Par. Sch. Bd., 540 F. App'x 429, 434-35

(5th Cir. 2013).  The Fifth Circuit has also stated that

"allegations of sexual harassment ... are always matters of public

concern, even when made both as a citizen and as an employee."

Johnson v. Louisiana, 369 F.3d 826, 831 (5th Cir. 2004) (citing

Wilson v. UT Health Ctr., 973 F.2d 1263, 1269-70 (5th Cir. 1992));

see also Wilson, 973 F.2d at 1269-70 (5th Cir. 1992) (holding that

employee's "reports of sexual harassment perpetrated on her and

other women at UTHC – is of great public concern.").

In the court's opinion, however, the content, form, and

context of Matory's alleged speech demonstrate that she was not

speaking on a matter of public concern; and certainly, it was not clearly established that such speech would be considered to be a matter of public concern. She did not speak out, report or bring to light any misconduct by Mason. She did not reveal his alleged misconduct to anyone. The court recognizes that the fact that speech is made in private does not necessarily foreclose a finding that it was a matter of public concern, but it is certainly a factor, and in the context of this case, a significant factor, as Matory spoke only in private and only to the official alleged to have been engaged in misconduct. See Salge v. Edna Indep. Sch. Dist., 411 F.3d 178, 187 (5th Cir. 2005) (observing that "[t]he audience before whom the employee speaks ... may also be relevant to an analysis of the context in which an employee's speech is offered); Kirkland v. Northside Indep. Sch. Dist., 890 F.2d 794, 800 (5th Cir. 1989) (noting the fact that the plaintiff never spoke publicly, to colleagues, supervisors, or the public, about the matter at issue in support of a holding that the plaintiff spoke on a matter of private concern); Terrell v. Univ. of Tex. System Police, 792 F.2d 1360, 1362 (5th Cir. 1986) (holding that, as the plaintiff never made an effort to communicate speech in his diary to the public, he did not speak on a matter of public concern); Eubank v. Lockhart Indep. Sch. Dist., No. 1:15-CV-1019-RP, 2017 WL 187662, at *13 (W.D. Tex. Jan. 17, 2017) (stating that "[w]hile not dispositive, the private nature of ...

communications nonetheless remains 'part of the context ... to be considered in determining whether the speech addressed a matter of public concern.'" (quoting <u>Davis v. West Cmty. Hosp.</u>, 755 F.2d 455, 461 (5th Cir. 1985)); <u>cf</u>. <u>Sloan v. Shannon</u>, No. CIV.A. 1:07CV245SAJA, 2009 WL 1162639, at *8-9 (N.D. Miss. Apr. 29, 2009) (noting that court may consider employee's attempts to make the concerns public, along with her motivation in speaking, and finding it pertinent, although not conclusive, that employee never attempted to air her sexual harassment complaints in a manner that would call the public's attention to the alleged wrong).

Furthermore, in refusing to assist Mason in his efforts to engage in a sexual relationship with Barnes, Matory was not protesting his sexual harassment of Barnes. Matory's own account reflects that her objection was not to Mason's efforts to pursue a sexual relationship with Barnes; rather, her objection was to Mason's involving her in his efforts to do so. While Matory also objected to certain specific crude and sexually suggestive remarks, under the circumstances, i.e., the remarks were limited to one occasion and were made only to Matory, the remarks were not of public interest or concern.[5]

---

[5] Even if this speech may have been a matter of public concern, it was not of sufficient "value to the process of self-governance" to warrant constitutional protection.

Conclusion

Based on the foregoing, it is ordered that Mason's motion for judgment on the pleadings as to Matory's First Amendment retaliation claim is granted. It is further ordered that defendant's motion "to strike memorandum in opposition to motion for judgment on the pleadings" is granted. Finally, it is ordered that plaintiffs' "rule 7 reply/motion to file second amended complaint outside of time" is granted to the extent that the court considered plaintiffs' untimely rule 7 reply and denied to the extent that plaintiffs seek leave to file an amended complaint.

SO ORDERED this <u>19th</u> day of June, 2017.


/s/ Tom S. Lee
UNITED STATES DISTRICT JUDGE